UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                        *
**HELEN SETTERLUND,**                   *
    Plaintiff,      *
                                        *
v.                                      *     Civil Action No.
                                        *     05-40194-FDS
**JOHN POTTER, POSTMASTER**             *
**GENERAL, UNITED STATES**              *
**POSTAL SERVICE,**                     *
    Defendant,      *
_____     *

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE

#### Introduction

Ms. Helen Setterlund, the Plaintiff in this case, has filed the instant action because for eight years, she was subjected to a hostile work environment while employed by the United States Post Office ("USPS"), in violation of Title VII of the Civil Rights Act. Ms. Setterlund was a custodian for the USPS, and during the course of her employment, she was continuously harassed by three co-workers, Jack Platt ("Platt"), Ben Wrubel ("Wrubel") and Frank McGinn ("McGinn"). Although Ms. Setterlund meticulously reported this harassment to her supervisors, the USPS continuously failed to adequately address her concerns. Accordingly, the actions of these co-workers, including sexually derogatory name calling, following, staring and leering at Ms. Setterlund, and making her the victim of a series of juvenile pranks, coupled with the USPS's grossly inadequate response, constituted a hostile work environment, constituted retaliation pursuant to Title VII, and ultimately led to her constructive discharge.

#### Procedural History

On January 3, 2008, the Defendant filed a Motion for Summary Judgment. On January 30, 2008, Ms. Setterlund filed an Opposition to the Defendant's Motion for Summary Judgment because the material facts of this case, when viewed in the light most favorable to Ms. Setterlund, establish a trial-worthy issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). In her response, Ms. Setterlund has demonstrated an actionable Title VII claim. In addition, Ms. Setterlund has shown that the USPS can be held responsible for the actions of Ms. Setterlund's co-workers, by failing to act reasonably in response to the reported incidents of harassment. Ms. Setterlund has also demonstrated an actionable claim for Title VII retaliation, as well as for constructive discharge.

For the reasons more fully set out below, all of the Exhibits in this case are admissible evidence.

## Argument

In pertinent part, Massachusetts District Court Local Rule 56.1, Motions for Summary Judgment, states:

> Opposition to motions for summary judgment shall include a concise statement of the material facts of record as to which it is contended that there exists a genuine issue to be tried, with page references to affidavits, depositions and other documentation. Copies of all referenced documentation shall be filed as exhibits to the motion or opposition. Material facts of record set forth in the statement required to be served by the moving party will be deemed for purposes of the motion to be admitted by opposing parties unless controverted by the statement required to be served by opposing parties.

It should be noted that nowhere within the Rule is there a requirement for precise admissibility. Although the evidence presented must be 'competent', the Rule does not require that such evidence be presented in admissible form at the motion stage of the proceedings. In the summary judgment context, "evidence must be admissible *at trial* [not at the motion stage] in order to be considered." *Goguen ex rel. Estate of Goguen v. Textron, Inc.*, 234 F.R.D. 13, *16 (D. Mass., 2006) (emphasis added). In sum, "suitable evidentiary form" does not require that the evidence be admissible when submitted for summary judgment; merely that it is in such a form that the facts contained therein will be in admissible form at the time of trial. *Morris v. Gov't Development Bank of P.R.*, 27 F.3d 746, 748 (1st Cir. 1994).

The United States Supreme Court has indicated that inadmissible evidence can be considered at the summary judgment stage of the proceedings: "We do not mean that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Seizing in part on this declaration, a number of federal courts have found that evidence that would be inadmissible at trial may nevertheless raise a material issue of fact on summary judgment if that evidence can be rendered admissible at trial. For example, in *Winskunas v. Birnbaum*, 23 F.3d 1264 (7th Cir. 1994), the Seventh Circuit explained that it is the substance of the evidence and not the form that controls:

> The evidence need not be in admissible *form*; affidavits are ordinarily not admissible evidence at a trial. But it must be admissible in *content* . . . . Occasional statements in cases that the party opposing summary judgment must present admissible evidence should be understood in this light, as referring to the content or substance, rather than the form, of the submission.

*Id.* at 1267-68 (citation omitted) (italics in original); *see also McMillian v. Johnson*, 88 F.3d 1573, 1584 (11th Cir. 1996) (holding that evidence in an inadmissible form may be considered at the summary judgment stage as long as the evidence is submitted in an admissible form at trial),

*McMillian v. Monroe County, Ala.,* 520 U.S. 781 (1997); *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996) ("The nonmoving party is not required to produce evidence in a *form* that would be admissible at trial, but the content or substance of the evidence must be admissible.") (quotation omitted) (italics in original); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1234-35 n.9 (3d Cir. 1993) (holding that hearsay evidence may be considered on summary judgment if the same evidence would be admissible in another form at trial). Hence, certain evidence that would be inadmissible at trial may be considered at the summary judgment stage of the proceedings if the substance of the evidence would be admissible in another form at trial.[1]

As Moore's Federal Practice points out in addressing Federal Rule of Civil Procedure 56, (which closely mirrors Massachusetts District Court Local Rule 56), Rule 56(e) requires that evidence be based on personal knowledge and "set forth *facts* as would be admissible at trial[.]" 11 James Wm. Moore et al., Moore's Federal Practice § 56.14[1][e][i] (3d ed. 1997) (emphasis added). The rule does not require that the evidence itself be admissible. *Id.*

### A. All of the Exhibits Submitted by Plaintiff are Admissible Because They are Not Hearsay, Fall within One of the Numerous Hearsay Exceptions, or Will Be Readily Admissible in Another Form at Trial

In this case, the Court may consider all the Exhibits submitted, even though not all the Exhibits are currently in a form that would be admissible at trial. Also, many of these Exhibits fall within the numerous exceptions to the hearsay rule, and can easily be authenticated at the time of trial.

- **Exhibit 2** – this document, a statement by Ms. Setterlund to the EEOC regarding the harassment she had endured from Platt, is admissible because it falls within Federal Rule of Evidence Rule 803(1), present sense impression. When Ms. Setterlund authored this letter, she was reflecting on her current work environment. Due to the temporal proximity between the negative behavior she was experiencing at USPS and when she wrote the letter, there is no likelihood of deliberate or conscious misrepresentation. Moreover, because Ms. Setterlund is the declarant, she can be cross-examined on the letter at trial.

- **Exhibit 3** – the 1998 Workplace Assessment is admissible because it is a business record pursuant to FRE 803(6). Compass Comprehensive Assessment and Consultation was in the business of conducting such workplace assessments, and it is the regular practice of Compass Comprehensive Assessment and Consultation to follow up each workplace

---

[1] In the past, the First Circuit has been somewhat more strict in its analysis of whether such evidence may be considered at the summary judgment stage of the proceedings. *See, e.g., Garside v. Osco Drug, Inc.,* 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). Nonetheless, the Court is encouraged to interpret its admissibility requirements more broadly to better align itself with nearly all the other federal circuits, who take a more liberal view on the matter of admissibility at the summary judgment stage of the proceedings.

evaluation with a Workplace Assessment Report. This report was made contemporaneously with the hostile behavior that was taking place at the USPS, and the work place analyst had personal knowledge of the hostile working environment based on his own observations and evaluations.

- **Exhibit 5** – the letter dated June 16, 1998, by Norman Jackson, stating that he observed Platt waiting at the time clock for nearly twenty minutes at the time Setterlund is scheduled to punch out, and that he followed her out of work even though it was not the end of his shift, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the hostile work environment that existed, but continued to do nothing about it. *See Emich Motors Corp. v. General Motors Corp.*, 181 F.2d 70 (7th Cir. 1950) (letters of complaint from customers offered as a reason for cancellation of a dealer's franchise. Letters were not offered to show the truth of the customers' complaints, but rather that the dealer had notice that he was in danger of having his franchise revoked). In addition, this document can be authenticated at the time of trial via live testimony, pursuant to FRE 901.

- **Exhibit 6** – the letter dated July 9, 1998 by Rebecca Kardon, where Ms. Setterlund is diagnosed as having Acute Stress Disorder due to harassment by Jack Platt in the workplace, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra*. This letter proves that the USPS had notice of Ms. Setterlund's Acute Stress Disorder due to harassment by Jack Platt in the workplace, but again did not adequately address the situation.

- **Exhibit 7** – the letter dated July 14, 1998 by Rebecca Kardon regarding Setterlund's temporary leave of work based upon her medical condition is also admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra*. This letter proves that the USPS had notice of Ms. Setterlund's continuing medical treatments, but again did not adequately address the hostile work environment that was the cause of her condition.

- **Exhibit 8** – the letter dated August 20, 1998 by Thomas Gosler, detailing disciplinary action for Platt due to Platt's harassing and threatening behavior towards Ms. Setterlund is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra*. This letter is being offered to show the effect it had on the listener, Jack Platt. This letter proves that Jack Platt was notified to stay away from Ms. Setterlund, but that he deliberately chose to disobey his supervisor's orders by continuing to harass her.

- **Exhibit 13** – the transfer request dated March 20, 2000, made by Ms. Setterlund due to Jack Platt" and his harassing and threatening behavior, is admissible because Ms. Setterlund herself made the transfer request concerning her personal employment; therefore it is a matter of which she has personal knowledge. Thus, although the transfer request is currently in inadmissible form, it will be presented in admissible form at trial, via Ms. Setterlund's personal testimony pursuant to FRE 601, 602. In addition, Ms. Setterlund can authenticate this document during her testimony pursuant to FRE 901(b)(1), (2) by testifying that she has personal knowledge that the transfer request is indeed what it is claimed to be, and she can testify to the genuineness of her signature on the document. Furthermore, this document, once authenticated, is not hearsay because it is not being offered for the truth of the matter asserted, but rather to show that the USPS had notice of Ms. Setterlund's desire for transfer, and that they did not act upon her requests. *See* explanation of Exhibit 5, *infra.*

- **Exhibit 15** – the transfer request dated May 17, 2000, exemplifying that Ms. Setterlund requested a transfer to a different USPS facility in order to avoid Platt, is admissible because it is a matter of which Ms. Setterlund has personal knowledge, it can be authenticated at trial, and it is not hearsay. *See* explanation of Exhibit 13, *infra.*

- **Exhibit 17** – the letters dated January 24 and 25, 2002, reporting Platt's harassing behavior including his glaring at Setterlund, his lurking and following Ms. Setterlund in her work area (which he had been ordered to stay away from), and his threatening comments to Ms. Setterlund are admissible because they contain both Ms. Setterlund's present sense impressions of the harassment she was experiencing, and show the effect on the listener (USPS). *See* explanation of Exhibit 2, *infra* and explanation of Exhibit 5, *infra.* In addition, Ms. Setterlund will be able to authenticate these documents at trial. *See* explanation of Exhibit 13, *infra.* Furthermore, these letters are not "self-serving." Rather, the letters indicate that Ms. Setterlund took this matter seriously, and as a result, conscientiously and diligently documented each incident of harassment that took place.

- **Exhibit 18** – the transfer request dated February 20, 2003 that Ms. Setterlund made in order to remove herself from Platt's continuous harassment is admissible because it is a matter of which Ms. Setterlund has personal knowledge, it can be authenticated at trial, and it is not hearsay. *See* explanation of Exhibit 13, *infra.*

- **Exhibit 22** – the letter dated April 30, 2003, by Dennis Cardwell notifying supervisors that he witnessed McGinn remarking about Setterlund in a conversation regarding her possible transfer, "Good, get her the hell out of here. We want to get rid of her anyway," is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra.* This letter is being offered to prove that the USPS had knowledge of the statements made by

McGinn, but once again neglected to adequately address the situation. In addition, this letter is accompanied by a signed affidavit, verifying the contents of the letter.

- **Exhibit 23** – the medical record dated May 21, 2003, detailing Ms. Setterlund's work related stress brought about by finding the feces in her locker, that led to her being prescribed medication to relieve her anxiety and stress, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). Dr. Kelleher's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of medical professionals to follow up a diagnosis such as this with written memoranda. In addition, Dr. Kelleher will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 25** – this excerpt from the EEO investigator's report is admissible because it is a record of a regularly conducted activity pursuant to FRE 803(6). The EEO is in the business of investigating claims of unequal treatment in the workplace, and it is the regular practice of the EEO to issue a report after investigating an EEO Complaint. This report was made near the time of the occurrence of the matters set forth within the report, and the investigator had personal knowledge of those matters based on the investigation he was conducting. Such an EEO Complaint can easily be authenticated at the time of trial by contacting the EEO and requesting a certified copy of the report.

- **Exhibit 28** – the May 21, 2003 note from Ms. Setterlund's physician, which ordered to remain out of work for the rest of the week and to return for further evaluation, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra.* This letter is being offered to show the effect on the listener; it demonstrates why Ms. Setterlund left work, and why she continued to seek medical treatment. This document can be authenticated via live testimony, pursuant to FRE 901 at trial, because Ms. Setterlund has personal knowledge of the interactions between herself and her physician.

- **Exhibit 29** – the e-mail dated May 22, 2003, stating that Linda Fogel had received a call from Ms. Setterlund during which Ms. Setterlund claimed to be suffering a recurrence of a stress claim filed in 1998 and according to Fogel, "Unfortunately the claim was approved," is admissible because Steve Rossetti, the recipient of the e-mail, will be available to authenticate the email via live testimony at trial. The authenticity of emails presents a new challenge to the court. Accordingly, in federal court, the parties may choose at their Rule 26(f) conference to agree to a process for stipulating to the authenticity of e-mails. In addition, the bar for establishing authenticity is not high under FRE 901. Deeper questions concerning trustworthiness of an e-mail go to the weight of the evidence which is for a jury to decide. *See U.S. v. Safavian*, 435 F. Supp.2d 36 (D.D.C. 2006) (when faced with a series of e-mails, the court refused to require detailed

authentication). In addition, this document is not hearsay because it is not being offered for the truth of the matter asserted, but rather to show the effect on the listener.

- **Exhibit 30** – the June 17, 2003 note from Ms. Setterlund's physician, as a result of Ms. Setterlund's worsening symptoms of severe stress and anxiety including abdominal pain, chest pain, high blood pressure, nausea, diarrhea, racing pulse and thoughts, and inability to sleep, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* This document shows the effect it had on Ms. Setterlund (why she continued to seek medical treatment), and can be authenticated via Ms. Setterlund's live testimony pursuant to FRE 901.

- **Exhibit 31**, the e-mail dated May 27, 2003 from Linda Fogel stating that she "really wanted to speak with you ("Syppko") about the incident where feces was placed in Ms. Setterlund's locker, is admissible because Bernadette Syppko, the recipient of the e-mail, will be available to authenticate the e-mail via live testimony at trial. *See* explanation of Exhibit 29, *infra.* In addition, this document is not hearsay because it is not being offered for the truth of the matter asserted, but rather to show the effect on the listener.

- **Exhibit 32** – the May 28, 2003 note from Ms. Setterlund's physician, where she was ordered to remain out of work until June 16, 2003, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* This document shows the effect it had on Ms. Setterlund (why she continued to seek medical treatment and remain out of work), and can be authenticated via Ms. Setterlund's live testimony pursuant to FRE 901.

- **Exhibit 33** – the June 16, 2003 note from Ms. Setterlund's psychiatrist, where she was ordered to remain out of work until she is further evaluated on July 15, 2003 due to her inability to function normally following severe stress in the workplace, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* This document shows the effect it had on Ms. Setterlund (why she continued to seek medical treatment and remain out of work), and can be authenticated via Ms. Setterlund's live testimony pursuant to FRE 901.

- **Exhibit 34** – the July 14, 2003 letter from Rita Gibbons, corroborating Setterlund's accounts of harassing behavior by Wrubel, stating that she too was forced to endure sexual harassment and threats to her safety by Wrubel, all of which were reported to USPS management, is admissible because it is not being offered to prove the truth of the

7

- **Exhibit 35** – the July 14, 2003 note from Ms. Setterlund's physician, ordering her to remain out of work on medical leave, due to stress and anxiety related conflict in her workplace, until further notice, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* This document shows the effect it had on Ms. Setterlund (why she continued to seek medical treatment and remain out of work), and can be authenticated via Ms. Setterlund's live testimony pursuant to FRE 901.

- **Exhibit 37** – the August 28, 2003 reports by Ms. Setterlund's physician and psychiatrist, stating that Ms. Setterlund is to remain out of work until further notice as, although Ms. Setterlund is feeling less anxious, her physical symptoms of stress and anxiety related disorders have not subsided, are admissible because they are not hearsay pursuant to FRE 801, because they are not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* These documents show the effect they had on Ms. Setterlund (why she continued to seek medical treatment and remain out of work), and can be authenticated via Ms. Setterlund's live testimony pursuant to FRE 901.

- **Exhibit 38** – the September 15, 2003 physician record, which states Setterlund "is not able to return to current Post Office site due to presence of perceived stalkers," is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The psychiatrist's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of medical professionals to follow up a diagnosis such as this with written memoranda. In addition, the psychiatrist will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 39** – the September 30, 2003 physician record reporting an attempt to cut back Ms. Setterlund's anxiety medication failed and she was forced to increase dosage levels, and that she was apparently still suffering from stress and anxiety related symptoms, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The physician's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice

- **Exhibit 40** – the November 25, 2003 physician record noting that Ms. Setterlund remains out of work and disabled, and will return for a follow up visit in two months, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The physician's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of medical professionals to follow up a diagnosis such as this with written memoranda. In addition, the physician will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 41** – the January 6, 2004 physician and psychiatrist letters, stating that Ms. Setterlund is under their care for posttraumatic stress disorder, panic disorder with agoraphobia and depression stemming from harassment by co-workers at the USPS, are admissible because they are not hearsay pursuant to FRE 801, because they are not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* These documents show the effect they had on the USPS (who, despite being notified of the severity of the situation, continued not to adequately address Ms. Setterlund's situation) and can be authenticated via live testimony at trial pursuant to FRE 901.

- **Exhibit 42** – the January 20, 2004 physician letter to the USPS stating that Ms. Setterlund remains out of work, is being treated for her stress and anxiety related symptoms, and will remain out of work until further notice, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* This document shows the effect it had on the USPS (who, despite being notified of the severity of the situation, continued not to adequately address Ms. Setterlund's situation) and can be authenticated via live testimony at trial pursuant to FRE 901.

- **Exhibit 43** – the psychiatric evaluation by Dr. Gordon dated January 20, 2004, which states that Ms. Setterlund should not be required to return to an unsafe work environment, and that there has been a grossly inadequate effort to address what appear to be legitimate concerns of harassment at work and lack of accountability of her supervisors, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* Dr. Gordon's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of psychiatrists to follow up a psychiatric evaluation such as this one with written

memoranda. In addition, Dr. Gordon will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 44** – the physician's record dated February 12, 2004, stating "the patient will continue her current medications, will continue follow up with her mental health provider. She will remain out of work at this time and is not suitable for return to work as of yet. Will return for medical follow up in two months," is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The physician's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of medical professionals to follow up a diagnosis such as this with written memoranda. In addition, the physician will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 45** – the physician's record dated April 20, 2004, where it was decided that Ms. Setterlund was still not able to return to work and would not be able to until further notice, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The physician's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of medical professionals to follow up a diagnosis such as this with written memoranda. In addition, the physician will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 46** – the May 4, 2004 letter of Joseph Brunelle M.A., C.R.C. a Vocational Rehabilitation Consultant to the USPS, stating that Ms. Setterlund was in need of placement in a different facility as also confirmed by a second opinion evaluator, is admissible because the letter is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* This document shows the effect it had on the USPS (who, despite being notified of the severity of the situation, continued not to adequately address Ms. Setterlund's situation) and can be authenticated via live testimony at trial pursuant to FRE 901.

- **Exhibit 47** – the May 14, 2004 physician's record by Ms. Setterlund's psychiatrist, who states that Setterlund suffers from posttraumatic stress disorder, anxiety, panic attacks, depression, physical symptoms and trouble sleeping due to an incident at work, and that these symptoms may be life long, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The psychiatrist's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his

examination of her, and it is the regular practice of psychiatrists to follow up a psychiatric evaluation such as this one with written memoranda. In addition, the psychiatrist will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 48** – the letter from Ms. Setterlund's psychiatrist to the USPS dated July 6, 2004, stating that Ms. Setterlund's trauma was associated with work and specific individuals therein, any reference to work, or situations that cause her to feel unsafe intensify these symptoms, is admissible because the letter is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. *See* explanation of Exhibit 5, *infra,* and explanation of Exhibit 28, *infra.* This document shows the effect it had on the USPS (who, despite being notified of the severity of the situation, continued not to adequately address Ms. Setterlund's situation) and can be authenticated via live testimony at trial pursuant to FRE 901.

- **Exhibit 49** – the physician's record dated July 28, 2004, which concluded "Assessment: Posttraumatic stress disorder with anxiety and depression. Chronic recurrent abdominal pain also due to the stress. The patient will remain out of work for the foreseeable future until these can be resolved," is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The physician's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of medical professionals to follow up a diagnosis such as this with written memoranda. In addition, the physician will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 50** – the psychiatric record dated September 5, 2004 by Dr. Candilis, which states "She [Ms. Setterlund] need not return to any environment where she is the subject of harassment, whether she has an anxiety disorder or not," is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* Dr. Candilis's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of psychiatrists to follow up a psychiatric evaluation such as this one with written memoranda. In addition, Dr. Candilis will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 51** – the psychiatric evaluation dated October 13, 2004, which advised that Setterlund return to work on October 18, 2004 starting at only four hours a day and that there be a gradual increase from four hours, to six hours and eventually to eight hours over a two to three month period, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The psychiatrist's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his

examination of her, and it is the regular practice of psychiatrists to follow up a psychiatric evaluation such as this one with written memoranda. In addition, the psychiatrist will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 52** – the physician's record dated October 27, 2004, which recommends that Ms. Setterlund continue to work four hours a day for another month and then be increased to six hours a day, is admissible because the document is a record of a regularly conducted activity, pursuant to FRE 803(6). *See* explanation of Exhibit 23, *infra.* The physician's opinions and diagnoses were made at the time Ms. Setterlund's condition existed, he had personal knowledge of Ms. Setterlund's condition based on his examination of her, and it is the regular practice of medical professionals to follow up a diagnosis such as this with written memoranda. In addition, the physician will authenticate this document pursuant to FRE 902 at the time of trial.

- **Exhibit 54** – the December 14, 2004 letter by Norman Jackson, reporting that he witnessed McGinn stating that he would bid on Ms. Setterlund's USPS employment position in an attempt to "screw" with her, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the hostile work environment that existed, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 56** – the December 21, 2004 letter by Deborah Elliot, reiterating that Syppko was aware of harassing comments made by McGinn regarding Setterlund and that Syppko did not consider these comments to be harassing or threatening and did not intend to take further action, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the hostile work environment that existed, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 57** – the May 3, 2005 letter by Susan Landriana, stating that she was a new employee within Setterlund's department at the Central Street facility and even as such she had already witnessed the harassment and intimidation that Setterlund was subjected to within the workplace, and also that she was aware of the discriminatory environment created for women within the Central Street facility, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the hostile work environment that

- **Exhibit 58** – the March 30, 2005 letter to the USPS by Ms. Setterlund's psychiatrist, stating that she would not be able to work that day due to another increase in symptoms of depression, anxiety, decreased energy and difficulty focusing, is admissible because is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the medical conditions Ms. Setterlund was suffering from as a result of workplace harassment at USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 60** – the letter written by Mary Innis, RN PC requesting that Ms. Setterlund not have her work hours increased to more than six hours a day due to continued stress in the work place is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the medical conditions Ms. Setterlund was suffering from as a result of workplace harassment at USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 61** – the physician order dated December 1, 2005 that Ms. Setterlund work no more than 4 hours a day is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the medical conditions Ms. Setterlund was suffering from as a result of workplace harassment at USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 62** – the physician order dated December 14, 2005, that Ms. Setterlund would be out of work December 15 and 16 of 2005 and that she may return to work on December 19, 2005 but for only four hours a day, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the medical conditions Ms. Setterlund was suffering from as a result of workplace harassment at USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 64** – the February 20, 2006 letter submitted by Ms. Setterlund's physician stating that she may require periodic absences from the workplace due to her posttraumatic stress disorder, and that she was out of work February 16 and 17 of 2006 and would not be returning until February 21, 2006, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the medical conditions Ms. Setterlund was suffering from as a result of workplace harassment at USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 65** – the April 24, 2006 letter Ms. Setterlund's physician wrote to the USPS ordering that she remain out of work until further notice due to symptoms from work related stress is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the medical conditions Ms. Setterlund was suffering from as a result of workplace harassment at USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 66** – the May 1, 2006 letter from the U.S. Office of Personnel Management sent to Setterlund stating that she was found disabled for her position as a Laborer Custodian due to posttraumatic stress disorder is admissible because as the recipient of this letter, Ms. Setterlund has personal knowledge of its contents and is therefore competent to testify about the matter at trial pursuant to FRE 601, 602. Likewise, Ms. Setterlund will be able to authenticate the document based on her personal knowledge via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 67** – the October 4, 2007 letter from Ms. Setterlund's Psychiatrist to the USPS stating that due to her posttraumatic stress disorder and the USPS's failure to accommodate this disorder, it is unlikely that Setterlund will ever be able to return to work with the USPS, is admissible because it is not hearsay pursuant to FRE 801, because it is not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the medical conditions Ms. Setterlund was suffering from as a result of workplace harassment at USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra.* The letter can be authenticated via live testimony at the time of trial pursuant to FRE 901.

- **Exhibit 78** – following one of the USPS's Sexual Harassment Talks, a bulletin was posted within the Central Street facility. As a demonstration of how serious these discussions were taken within the facility, it should be noted that an employee drew a frowning face on the bulletin and wrote "Grow Up" underneath it. This is admissible as a present sense impression pursuant to FRE 803(1) as the markings on the bulletin were done immediately following the Sexual Harassment Talk. This incident can be authenticated via live testimony during trial by employees who saw the bulletin.

### B. The Government Exhibits Are Also Admissible Because They are Not Hearsay Pursuant to FRE 801

Also, to the extent that the defendant objects to the statements within government exhibits, Ms. Setterlund requests the Court to consider the statements for the following reasons:

- **Exhibit 4** – the statements attributed to a co-worker in the June 16, 1998 Ms. Setterlund wrote to the USPS are admissible because the statements are not hearsay pursuant to FRE 801, because they are not being offered to prove the truth of the matter asserted. Rather, the significance of this letter lies solely in that such statements were made, thus proving that the USPS had notice of the harassment Ms. Setterlund was subject to at the USPS, but continued to do nothing about it. *See* explanation of Exhibit 5, *infra. See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.")

- **Exhibit 11** – the statements attributed to one of Ms. Setterlund's co-workers, in the March 17, 2000 letter from Ms. Setterlund to her supervisor, Ken Fairbrother, requesting a change of schedule because she was in fear for her life from Platt's harassment of her, and contacted the Worcester City Police Department due to such fear of Platt, is admissible because the statements are not hearsay pursuant to FRE 801. *See* Explanation of Exhibit 4, *infra.*

- **Exhibit 24** – Ms. Setterlund's statements regarding May 5 through May 16, 2003, that there were numerous incidents where the toilets in Ms. Setterlund's assigned route were clogged with mounds of feces on top of the clog; indicating an attempt by someone to purposefully clog these toilets and then worsen the situation by defecating on top of the clog, that contains statements from others regarding the toilets, should be considered because the statements are not hearsay pursuant to FRE 801. *See* Explanation of Exhibit 4, *infra.*

- **Exhibit 27** – the statements attributed to Ms. Setterlund's co-workers in the May 21, 2003 written statement to USPS supervisors by Ms. Setterlund, reporting that Wrubel mumbled something to her sounding like, "cunt, cunt," is admissible because the statements contained therein are not hearsay pursuant to FRE 801. *See* Explanation of Exhibit 4, *infra.*

### C. The Affidavit of Ann Conroy Is Admissible in its Entirety Because the Statements of Another Individual Contained in the Affidavit are Not Hearsay Pursuant to FRE 801

**Exhibit 59** of Ms. Setterlund's Statement of Undisputed Facts, is an Affidavit of Ann Conroy, another female USPS employee who has harassed and discriminated against by Jack Platt. In an EEO proceeding in connection with the harassment that Ms. Conroy suffered, she filed an affidavit that contained the statements of another individual, Mike Dirsa.

The statements made by Mr. Dirsa are not hearsay pursuant to FRE 801, because they are not being offered for the truth of the matter asserted. Rather, the significance of these statements lies solely in that such statements were made, thus proving that the USPS had notice of the harassment that not only Ms. Setterlund, but other female employees (most notably Ms. Conroy), were subject to at the USPS. Such statements show that despite being aware of the harassment that several female employees suffered at the hands of Jack Platt, the USPS failed to adequately address the hostile work environment created by this individual. *See* explanation of Exhibit 5, *infra. See also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("We do not mean that the non-moving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.")

### Conclusion

Wherefore, the Plaintiff requests that all Exhibits contained within Plaintiff's Opposition to Defendant's Motion for Summary Judgment be admitted in their entirety.

Respectfully Submitted
Helen Setterlund
By her Attorney,

*//Chester V. Shea III//*

Chester V. Shea III
484 Main Street, Suite 570
Worcester, MA 01608
508.799.0090
BBO#455820
Dated: February 14, 2008

## CERTIFICATE OF SERVICE

I, Chester V. Shea III, Esq., hereby certify that I have this 14th day of February 2008, served the attached documents by mailing a copy thereof, postage prepaid, to all parties of record.

*//Chester V. Shea III//*

Chester V. Shea III, Esq.