UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HELEN SETTERLUND,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>JOHN POTTER, Postmaster General,  )<br>United States Postal Service,  )<br>)<br>Defendant.  )  | Civil Action No.<br>05-40194-FDS |

**MEMORANDUM AND ORDER ON DEFENDANT'S**
**MOTION TO STRIKE CERTAIN OF PLAINTIFF'S EXHIBITS**

**SAYLOR, J.**

This is an action alleging sexual harassment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. Plaintiff Helen Setterlund, a female postal employee, alleges that she was subjected to a hostile work environment, unlawful retaliation, and disparate treatment on the basis of her gender at a United States Postal Service facility in Worcester. The substance of Setterlund's complaint is that she was subjected to harassment by one or more co-workers and that her employer failed to take corrective action.

Pending before the Court are defendant's motion for summary judgment and motion to strike several of plaintiff's exhibits. For the foregoing reasons, the motion to strike will be conditionally granted, and plaintiff will be given 21 days in which to cure any deficiencies. The motion for summary judgment will be addressed in a companion order.

**I.      Factual Background**

Plaintiff Helen Setterlund began her employment with the United States Postal Service as a letter carrier in 1987. After a back injury, she became a custodian for the USPS, first in Shrewsbury and then (in 1996) at a facility in Worcester. She was assigned to the Worcester facility until she left USPS employment in February 2006.

Many of Setterlund's allegations involve Jack Platt, who was a custodian at the Worcester facility. Some involve Ben Wrubel and Frank McGinn, who are also custodians.

In October 1997, Setterlund signed an affidavit in support of a complaint by a fellow female employee, Deborah Flagg, to the Massachusetts Commission Against Discrimination. The affidavit indicated that she had witnessed Platt sexually harassing Flagg. In early 1998, Setterlund herself filed a complaint with the Equal Employment Opportunity Commission concerning harassing and intimidating behavior by Platt.

Setterlund continued to complain to her supervisors and the EEOC about unpleasant encounters with Platt, including that he stalked her, stared and glared at her, and threatened her. She also occasionally complained of hostile treatment by Wrubel and McGinn. After someone left a bag of feces in Setterlund's locker, she became depressed and was diagnosed with post-traumatic stress disorder.

In February 2006, Setterlund's physician sent a note to the USPS excusing her absence for a few days. In April, the physician sent another note stating that Setterlund was to remain out of work until further notice. In May, Setterlund received a letter from the U.S. Office of Personnel Management notifying her that she had been found to be "disabled" due to post-traumatic stress disorder. In October, her psychiatrist sent a letter to the USPS saying she would likely never return to work because the USPS had failed to accommodate her post-traumatic stress disorder.

## II. Procedural History

Plaintiff filed the present action in federal court on October 27, 2005. Her seven-count complaint alleged claims of (1) negligence; (2) breach of contract; (3) breach of the implied covenant of good faith and fair dealing; (4) intentional and negligent infliction of emotional distress and sexual harassment; (5) assault and battery; (6) violation of the Massachusetts Civil Rights Act and unlawful retaliation in violation of Title VII, 42 U.S.C. § 2000e; and (7) violation of Mass. Gen. Laws ch. 151B and sex discrimination in violation of Title VII.

On June 13, 2006, defendant filed a motion to dismiss the tort, contract, and state law discrimination claims pursuant to Fed. R. Civ. P. 12(b)(1) and (6). In December 2006, the Court granted defendant's motion.

On January 3, 2008, defendant filed a motion for summary judgment on the three remaining federal law counts: USPS's failure to remedy a hostile work environment (Count 4), Title VII retaliation (Count 6), and Title VII gender discrimination (Count 7). Plaintiff filed a memorandum of law in opposition to defendant's motion, to which she attached several dozen exhibits, including (but not limited to) letters, affidavits of co-workers, medical records, and USPS records. Defendant has moved to strike the majority of plaintiff's exhibits as inadmissible due to lack of authentication or because they consist solely of hearsay.

## III. Analysis

Summary judgment is to be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits" show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56 (c). A party opposing summary judgment "may not rely merely on allegations or denials in its own pleading."

*See* Fed. R. Civ. P. 56(e)(2).  Generally, evidence must be admissible at trial in order to be considered on summary judgment, although the form of the evidence itself need not always be admissible.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Goguen v. Textron, Inc.*, 234 F.R.D. 13, 16 (D. Mass. 2006).  Thus, affidavits, although not admissible at trial, may be offered as evidence in the summary judgment phase if they set forth facts that would be admissible at trial under the Federal Rules of Evidence.  *Goguen* , 234 F.R.D. at16; *see also* Fed. R. Civ. P. 56(e).

Here, defendant has moved to strike fifty separate exhibits submitted by plaintiff for failure to comply with the requirements of Rule 56( c).  The issues presented fall into three categories: documents that have not been authenticated, unsworn witness statements, and documents including other forms of hearsay.

### A. Unauthenticated Documents

Defendant objects in part to Exhibits 3, 5-8, 13, 18, 22-23, 25, 28-52, 54, 56-58, 60-62, 64-67, and 78 on the grounds that they have not been authenticated.

> In order to be admissible at trial, a document must be authenticated.  Generally, authentication requires competent testimony concerning the document.  *See* Fed. R. Evid. 901(b)(1).  Certain categories of documents are self-authenticating under Fed. R. Evid. 902, and require no extrinsic testimony.  Each document submitted in support of summary judgment must either be properly authenticated or must be self-authenticating under the Federal Rules.  The authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be.

*Goguen*, 234 F.R.D. at 16-17 (citations omitted).

Here, plaintiff has not attempted to authenticate *any* of the disputed exhibits.  Although many appear to be genuine—for example, plaintiff has submitted copies of documents that are

4

almost certainly relevant records of the USPS or her medical providers—the appearance of authenticity is not enough. Likewise, it is not sufficient for plaintiff's counsel merely to assert, in the memorandum of law opposing summary judgment, that the documents are authentic. *See Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 46 (1st Cir. 1984). In response to defendant's motion to strike, instead of resubmitting her evidence in proper form and including authenticating affidavits, plaintiff instead argued that she is not required to submit evidence of authentication at the summary judgment phase. That is simply not correct. The challenged exhibits have not been authenticated, and accordingly are subject to being struck.

**B.      Unsworn Witness Statements**

Plaintiff has also submitted at least six exhibits that are in the form of witness statements or letters, generally addressed "to whom it may concern." None of the six statements are in the form of affidavits, and none have been sworn to by the relevant witness. The exhibits are as follows:

Exhibit 5 is a statement made "To Whom It May Concern," apparently written by a co-worker named Norman Jackson, stating that he saw Platt waiting by the time clock for plaintiff.

Exhibit 22 is a statement made "To Whom It May Concern," apparently written by a co-worker named Dennis Cardwell, stating that he heard McGinn say (in response to rumors that Setterlund was going to transfer to another facility) that he wanted to get rid of her anyway.[1]

Exhibit 34 is a letter written "To Whom It May Concern," apparently written by a co-worker named Rita Gibbons, stating that she too had been threatened and harassed by Wrubel.

---

[1] Attached to the statement is an affidavit of Cardwell containing a substantially similar statement: that affidavit is in proper form and will be accepted.

Exhibit 54 is a handwritten note, apparently written by a co-worker named Norman Jackson, stating that he heard McGinn say he would bid for Setterlund's job just to "screw" with her.

Exhibit 56 is a statement and apparently written by a co-worker named Deborah Elliot, stating what occurred at a December 2004 meeting involving herself, plaintiff, and two supervisors, regarding comments made by McGinn.

Exhibit 57 is a handwritten letter "To Whom It May Concern," apparently written by USPS employee Susan Landriana, stating that in her short time in the department, she is already keenly aware that there is outward hostility and discrimination against female custodial and clerical staff.

Whether the statements are hearsay or not depends in large part on whether the statements are offered for the truth of the matters asserted therein. Plaintiff argues that she does not intend to offer them for their truth (that is, to show that the events at issue happened) but for other purposes (to show that the USPS had knowledge of, or received notice of, certain events).

It is unclear how plaintiff expects to prove that the USPS was aware of the matters asserted in these statements. If, for example, plaintiff is contending that these statements were from the files of USPS, and were produced in discovery in this case, she needs to submit an affidavit or other evidence to that effect. If plaintiff is contending that the statements themselves indicate that the USPS had such knowledge or notice, then she is, in fact, offering them for their truth.

To the extent plaintiff is asserting the former, she has not laid a proper foundation, and the evidence is subject to being struck. To the extent she is asserting the latter, they are mere

unsworn statements, neither in the form of a deposition or an affidavit.  A party opposing summary judgment is not required to depose his own witnesses; affidavits for that purpose are permitted under the rule.  *Celotex*, 477 U.S. at 323.  However, plaintiff has pointed to no case, and the Court has found none, where an unsworn witness statement (as opposed to a deposition or affidavit) was accepted by a court in opposition to a motion for summary judgment.  The unsworn witness statements are therefore subject to being struck.

### C.      Other Hearsay Issues

#### 1.      Exhibits Not Offered for Truth

Defendant objects to Exhibits 2-3, 6-8, 13, 15, 17-18, 29, and 31 as hearsay.  According to plaintiff, those exhibits are not offered for their truth, but to show that defendant had knowledge of, or was on notice of, certain matters.  The exhibits are as follows:

Exhibit 2 is a written statement given by Setterlund to an EEOC counselor in March 1998 when she filed a complaint regarding Platt's harassing behavior.

Exhibit 3 is a "Comprehensive Assessment and Consultation" report made by a private company (Compass) hired by USPS to evaluate the working environment at the Worcester USPS facility.

Exhibits 6 and 7 are letters from plaintiff's nurse to the USPS stating that plaintiff presented at UMass Medical Center complaining of a harassing environment at work, that she was diagnosed with acute stress disorder, and that she would be required to miss work for several days for medical treatment.

Exhibit 8 is a document captioned "Historical Background of Maintenance Department Concerns," with a cover letter.  It appears to have been drafted by USPS employees, including the

postmaster, in the course of their employment.

Exhibit 13 is a USPS form on which plaintiff requested a schedule change, indicating that the need for the change was due to problems with Platt.

Exhibit 15 is a fax from plaintiff to another postal facility requesting a transfer. The fax is on USPS fax letter-head and has a time-stamped confirmation of successful transmission.

Exhibit 17 consists of two letters written and signed by plaintiff, addressed to her supervisor at USPS, complaining of adverse interactions with Platt that occurred on the days the letters were written.

Exhibit 18 is a USPS form on which plaintiff requested a transfer to the Providence USPS facility.

Exhibits 29 and 31 consist of e-mail correspondence between supervisors at the USPS.

Again, even if plaintiff seeks to offer the documents to show that USPS had knowledge or notice of some fact, plaintiff does not appear to have laid a foundation that the USPS was actually in possession of the document at issue. Alternatively, certain of the exhibits appear to be records of regularly-conducted activity within the meaning of Rule 803(6), and might be admitted on that basis, assuming a proper foundation is laid.

### 2. **Medical Records**

Defendant objects to various medical records, and letters from medical providers, as hearsay. Assuming that they are authenticated, the documents appear to be admissible.

Exhibit 23 is consists of notes of plaintiff's physician (Dr. Kelleher) regarding her condition, diagnosis, and treatment. This appears to include statements made for purposes of medical treatment under Fed. R. Evid. 803(4) and generally consists of a record of a regularly-

conducted activity under Fed. R. Evid. 803(6).

Exhibits 28, 30, 32, 33, 35, 37-52, 58, 60-62, 64, 65, and 67 consist of notes produced by plaintiff's physicians and psychiatrist, and letters from her physicians, nurses, and psychiatrists to the USPS.  These documents appear to include statements made for purposes of medical treatment under Fed. R. Evid. 803(4) and records of a regularly-conducted activity under Fed. R. Evid. 803(6) (either the medical facility or the USPS).  Furthermore, to the extent that they are not offered for their truth (for example, to show their effect on the recipient), they are not hearsay.

### 3.    Other Exhibits

Exhibit 25 is page 7 of a 13-page "Investigative Summary" of some kind.  Without further information, it is clearly hearsay and inadmissible to prove the truth of the events cited in it. Plaintiff contends, in her motion in opposition to defendant's motion to strike, that this is part of an EEOC investigator's report.  If so, it may be admissible as an official report or possibly a business record, or if offered for a non-hearsay purpose (e.g., to show knowledge or notice).  In its present form, however, it is subject to being struck.

Exhibit 59 is an affidavit of co-worker Ann Conroy prepared in connection with an EEOC proceeding.  Portions of the affidavit appears to relate statements of others, and are therefore hearsay and inadmissible.

Exhibit 66 is a letter from the United States Office of Personnel Management to plaintiff informing her that she has been determined to be disabled with respect to her job as a custodian due to post-traumatic stress disorder.  This appears to be a record of a regularly-conducted activity under Fed. R. Evid. 803(6), or an admission of a party-opponent under Fed. R. Evid.

801(d)(2), and therefore may be admissible if a proper foundation is laid.

Exhibit 78 is a largely typed document with no title; some of the words are cut off. Plaintiff contends that it was a bulletin that was posted at the Worcester USPS facility by USPS supervisors regarding sexual harassment. Presumably, it is not offered for its truth, and therefore is not hearsay, assuming again that a proper foundation has been laid as to what the document is.

### D. The Remedy for the Deficiencies in the Evidence

The Court could simply strike all of plaintiff's exhibits that are not authenticated or otherwise not in proper evidentiary form. Striking of all these exhibits would presumably result in the granting of defendant's summary judgment motion on all counts, as the plaintiff would have very little remaining evidence on which to base her opposition.

The Court also, however, "has discretion to allow a party to cure deficiencies in supporting documentation." *See Goguen*, 234 F.R.D. at 17. *See also McMahon v. Digital Equipment Corp.*, 162 F.3d 28, 34 (1st Cir. 1998); *United States v. Charles George Trucking Co., Inc.*, 624 F. Supp. 1185, 1187 (D. Mass. 1986). Rather than impose the draconian consequence of striking all objected-to exhibits, the Court will instead give plaintiff a 21-day period of time in which to file supplemental materials curing the defective submissions. The Court will, however, conditionally grant the motion to strike as to all unauthenticated exhibits and unsworn statements, which order shall take effect on October 22, 2008, unless plaintiff files such supplemental materials, in which case the motion to strike will be denied without prejudice. Defendant may renew the motion to strike, or bring it in a revised form, in response to any such submission by the plaintiff.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Strike Certain of Plaintiff's Exhibits is conditionally GRANTED. The Order striking those exhibits shall take effect on October 22, 2008, unless plaintiff files supplemental materials curing some or all of the deficiencies outlined above on or before October 21, 2008, in which case the motion to strike shall be deemed to be denied without prejudice to its renewal.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                                F. Dennis Saylor IV
                                                United States District Judge

Dated: September 30, 2008